In the Matter of the Investigation of Contracts Entered into by the City of Albany and Officials of the City of Albany before a Committee of the Common Council of the City of Albany.

(Supreme Court, Albany Special Term, November, 1920.)

**Statutes — Second Class Cities Law, § 40 — limited power of common council to compel attendance of witnesses and production of books and papers — how subpoena should be issued — when witness cannot be punished for disobeying subpoena.**

Statutes relating to compelling the attendance of witnesses before committees of a common council or of the legislature must be strictly construed. (P. 378.)

Under section 40 of the Second Class Cities Law a committee of the common council of the city of Albany, upon an investigation of city officers and departments, is clearly vested with power to compel the attendance of witnesses from any of said departments and to compel the production before the committee of all records and papers kept by every city officer and each city department. (P. 377.)

Where, however, a committee of the common council of the city of Albany, in conducting an investigation concerning a contract with a company involving the sale and delivery of coal to the city at a certain price, is acting solely under section 40 of the Second Class Cities Law, which declares that the common council "has power to compel the attendance of witnesses and the production of books, papers or other evidence at any meeting of the common council or any committee

thereof " under a subpœna signed by the president of the
council, the committee is without power to compel the attend-
ance of witnesses other than those having in their custody,
as city officers or as clerks or custodians of any city depart-
ment, its records and papers.   (Id.)

Under said section 40 a subpœna must be issued by the com-
mon council itself, not by its committee, and though the sub-
pœna must be signed by the president of the council he is
without authority so to do unless authorized by the resolution
of the common council.   (P. 379.)

Under said section 40 of the Second Class Cities Law the
common council has no authority to summon an individual or
an officer of a corporation doing business with the city to
produce books or papers, and a subpœna duces tecum, though
signed by the president of the council and issued by the com-
mittee, requiring the receiver in bankruptcy of a coal com-
pany to produce its books, papers and records before the
committee, is unauthorized, and a proceeding to punish said
receiver for failure to obey the subpœna will be dismissed.
(Pp. 382–384.)


PROCEEDINGS to compel witness to appear for exam-
ination before a committee of the common council of
a city and to produce books and papers.

John N. Carlisle, Alderman John C. Watson,
chairman of the committee, for the committee of
aldermen of the common council.

Michael D. Reilly, W. E. Woollard, in person, for
respondent.

RUDD, J.   By resolution the common council of
the city of Albany created a committee from its mem-
bership to make investigation concerning contracts
to which the city of Albany is a party.

This committee organized and caused subpœnas to
be issued requiring the attendance before the com-
mittee of certain witnesses.

A subpœna duces tecum was issued by the committee addressed to William E. Woollard, as receiver in bankruptcy of the Montgomery Coal Company. The subpœna was signed by the president of the common council. It requred Mr. Woollard to produce the books, papers and records of the coal company. This company and the city of Albany had entered into a contract for the delivery of coal at a certain price for use by the city.

Consent to the service of the subpœna was given by an indorsement upon the subpœna by Hon. Frank Cooper, United States judge.

The respondent, Mr. Woollard, claims that there was an irregularity in the service of the subpœna, in that the process server did not show to him the original subpœna at the time service was made of the subpœna.

An affidavit is filed by the person making the service that he did show the original paper.

However that may be Mr. Woollard appeared in answer to the subpœna and stated that he had in his custody the books, papers and records of the Montgomery Coal Company, which records he would not produce except upon condition that the books were not to be impounded by the committee and that when he went from the committee room the books were to go with him.

The committee refused to agree to the condition imposed and the respondent refused to be sworn. A colloquy ensued in which Mr. Woollard gave expression as to the motives prompting the committee in its investigation and as to what he would do and as to what the result might be. With these statements we are not at all concerned.

The respondent was not subpœnaed as an individual. He was subpœnaed as a receiver in bankruptcy to

produce, and that means, of course, to identify the books, papers and records of the company involved, and in order that such identification might be had and the committee might know that the subpœna had been complied with in the production of all the books, papers and records sought, it was necessary that he be sworn.

To this request he made refusal. He left the common council chamber and the committee of the aldermen instituted this proceeding, asking for an order requiring the respondent to produce before the committee the books and papers and to submit himself to examination.

The questions here involved are:

Was the committee vested with the power to subpœna the respondent?

Did the subpœna duces tecum call upon him to take the oath as a witness?

Had he the right to refuse to produce the books, imposing as a condition precedent the stipulation which he offered?

Has this court the power to compel recognition by the respondent of the subpœna, to compel the production of the books and require his submission to the jurisdiction of the committee?

This court is concerned not at all as to the nature of the conversation had between the members of the committee and the respondent, either when the committee was in session or at any other time, save in so far as statements were made by him as to why he refused to recognize the jurisdiction of the committee over the books or over himself.

We are not concerned with any alleged motives or desires, political or otherwise, on the part of the committee or any member thereof, nor are we concerned

with what the respondent desires or hopes to do or to show or to prove.

It is admitted that the Montgomery Coal Company, of which Mr. Woollard is receiver, is involved with the city in a contract for the sale and delivery of coal. What the merits are in this relation, or as to whether other people are involved, does not matter.

This committee has undertaken to ascertain certain facts relating to the contract in question.

Has the committee from the common council power to ascertain on the part of the city what the entries and records in the books of the Montgomery Coal Company show and if it has is the committee of the aldermen empowered by law to proceed in the manner in which it has?

The committee shows by the papers here filed and upon the argument that it was appointed by the common council under section 40 of Second Class Cities Law.

Recognizing that the records of the Montgomery Coal Company, which the committee sought, were in the hands of the receiver appointed by the Federal court, the committee obtained consent of the United States court, by the hand of Judge Cooper, to the service of the subpœna in the form in which it was.

The committee states that it was not its desire in any way to interfere with the possession of the books in the hands of the receiver or to interfere with any hearing to be had before the referee in bankruptcy and our attention is called by the counsel for the committee to a letter addressed by the chairman of the committee to the receiver in bankruptcy, to that effect.

The committee desires the privilege and it claims the right to examine these books and records and to read therefrom into the minutes of the committee such portions as it might determine.

Unless the legal custodian of the books and records had submitted himself as a witness to the extent at least of identifying the books it would have been a little difficult for the committee to introduce any portion of the contents of the books in evidence.

The respondent was in duty bound to recognize in every way possible the obligations which are his as receiver and to protect the books and records of the company, but aside from that he could not have had, as a witness or as a receiver, any personal interest which would have justified his refusal to allow portions of the record in the books to be presented to the committee of the common council.

The respondent had no object in concealing the contents of these papers, as is evidenced by the fact that he publicly stated that he was willing to present the books and papers upon his own terms and conditions.

The serious question in the opinion of this court raised by the respondent is that the proceeding instituted by the committee of the common council of the city of Albany is without jurisdiction. Other questions are raised.

The respondent contends:

*First.* That the subpœna duces tecum did not require his personal attendance before the committee.

*Second.* That the service was defective because of the failure of the process server to exhibit the original.

*Third.* That the books could not be lawfully subpœnaed by the committee without an order of the United States court.

*Fourth.* That the respondent was justified in attaching to the production of the books a stipulation that the committee should not impound them or hold them for inspection.

*Fifth.* That the proceeding is without jurisdiction

because the subpœna purports to have been issued under section 40 of the Second Class Cities Law.

*Sixth.* That the proceeding to punish for alleged contempt is without jurisdiction.

Let us dispose of the first question, as to the jurisdiction of this committee in subpœnaing respondent under a subpœna signed by the president of the common council.

Section 40 of the Second Class Cities Law is one of the sections under article 4 of that law, it is entitled common council, and covers the legislative power, members, legislative acts, appropriations, franchises and other subjects. The section is entitled " regulations of duties of officers " and reads as follows:

" Sec. 40. Regulations of duties of officers. The common council may, by ordinance passed by three-fourths of all its members, not inconsistent with this chapter, or other laws of the state, regulate the powers and duties of any city officer or department; and it has power to investigate all city officers and departments and shall have access to all records and papers kept by every city officer or department, and has power to compel the attendance of witnesses and the production of books, papers or other evidence at any meeting of the common council or of any committee thereof, and for that purpose may issue subpœnas signed by the president."

The portion of the section with which we are concerned follows the semicolon and reads: " *and it has power to investigate all city officers and departments and shall have access to all records and papers kept by every city officer or department, and has power to compel the attendance of witnesses and the production of books, papers or other evidence at any meeting of the common council or of any committee thereof, and*

*for that purpose may issue subpœnas signed by the president."*

Under that section a committee of the common council in Albany is clearly vested with the power under the law to compel the attendance of witnesses from any of the departments of the city and to compel the production before the committee of all records and papers kept by every city officer and each city department.

When the section reads " and has power to compel the attendance of witnesses and the production of books, papers or other evidence at any meeting of the common council or of any committee thereof " under a subpœna signed by the president of the common council, it seems as if that section meant to compel the attendance of witnesses having in their custody as city officers or as clerks or custodian of any of the departments, records and papers, and that it does not empower the committee to compel the attendance of other witnesses than those in the class mentioned.

Can it be that the provisions of section 40 contemplate empowering a committee of the common council by subpœna signed by the president of the body, to summon officers of corporations and citizens to produce their books and papers before the committee?

If there was or had been a contract between the city of Albany and any individual or corporation doing business in the city of Albany, or elsewhere, does the phraseology of section 40 empower the common council committee to summon before it all of the books, papers and records of that corporation under a subpœna issued by the president of the common council?

The purposes and the powers of the section seem apparent. They are that a committee of the legis-

lative body of the city is empowered to call before that body, or a committee of the body, any officers, custodians or departments having in possession papers which are those of the city.

Such limitation of powers may be unfortunate.

In addition to the statute known as the Second Class Cities Law, the cities of the state are empowered to act under the General City Law.

It is true that a concrete provision of a special act would take precedence over a general provision in the general act and particularly so when one is inconsistent with the other, but that is not the case presented.

Statutes relating to compelling the attendance of witnesses before committees of a common council or of the legislature must be strictly construed. *People ex rel. Webster* v. *Van Tassel,* 64 Hun, 444; affd., 135 N. Y. 638; *Matter of Barnes,* 204 id. 108.

Great care must be had in determining as to the authority of a common council or of one of its committees; such authority is purely statutory and lacks the inherent power which legislative committees have under the common law.

Having this rule in mind, which calls for a strict construction of the statutes, we find there are several provisions which must be read together, and, so far as is possible, must be harmonized.

The committee of the common council here involved is acting solely under section 40 of the Second Class Cities Law. That section seems to give to the committee that authority in order to present, if so determined, remedial measures for the regulation of city officers.

The power to investigate is given primarily to the council itself but no doubt can be conferred upon a committee of that body.

It provides that the common council has power to compel the attendance of witnesses and the production of books or other evidence at any meeting of any committee thereof.   While the committee may take testimony it is the common council which is given the power to compel the attendance of the witnesses and the production of books and papers.   No such power is granted to the committee itself.

When a subpœna is to be issued under section 40 it must be issued by the common council itself, not by the committee.   The subpœna must be signed by the president but the president as such has not authority to sign a subpœna unless by act of the common council he be so authorized.   The common council can only act by resolution.

A resolution of the common council, authorizing and empowering the issuance of a subpœna under the hand of the president, is a necessary prerequisite to a valid subpœna under section 40.

An examination of the resolution adopted by the common council creating the committee here in question contains no such authority, and our attention is not called to any resolution or ordinance of the common council vesting in or giving to the president of the body authority to issue or sign the subpœna under which this proceeding is taken.

Sections 6, 7 and 8 of the General City Law relate to investigations by committees of the common council but do not confer any jurisdiction upon the common council or its committee to undertake the same.   The provisions relate to the powers of a common council or a committee of its members " upon any subject or matter within the jurisdiction of such common council, or to examine any officer of the city, in relation to the discharge of his official duties,'' etc., and the pro-

Supreme Court, November, 1920.      [Vol. 113.

cedure and authority for swearing of witnesses, summoning witnesses and compelling their attendance.

No jurisdiction to undertake the inquiry is conferred; the clear intent is that if the common council has jurisdiction of the subject, and shall have appointed a committee to take testimony in aid of such investigation, the committee may have certain powers specifically set forth.

The authority of the committee or of the council is found in section 40 of the Second Class Cities Law. It is this section which confers jurisdiction upon the council and upon its committee to conduct this particular investigation and to take testimony therein.

The provisions, above cited, of the General City Law, are applicable here and may be utilized if not inconsistent with the provisions of the Second Class Cities Law. They are not inconsistent with the provisions of section 40 of the Second Class Cities Law; they supply a concurrent remedy so far as summoning witnesses at least is concerned.

Section 40 provides that the common council " may " issue subpœnas. Section 7 of the General City Law provides that the chairman or a majority of the committee may apply to a justice or a judge or a recorder, who is given power to issue a summons if it satisfactorily appears to him that the testimony of any witness may be material to the investigation.

Section 40 of the Second Class Cities Law confers express power upon the common council to issue subpœnas to produce books and papers and section 7 of the General City Law confers no such express powers and relates only to requiring a witness " to appear before such committee to testify " when it satisfactorily appears to a justice or judge " that the testimony of any witness named, residing in this state, is or may be material."

Section 8 of the General City Law provides as follows: " If a witness shall fail to attend, as directed by such summons, the justice or officer issuing the summons, on due proof of the service thereof, and of the failure of such witness to appear, or to produce such books and papers, according to the direction of such subpœna,  *   *   * he shall be deemed in contempt."

What effect is to be given to the words " or to produce such books and papers, according to the direction of such subpœna." The word " such " is used before books and papers and no mention is made of any books and papers in section 7. In section 6, however, mention is made of books and papers in the possession or under the control of a city officer. Reference must have been made in section 8 to such books and papers as are mentioned in section 6. It is the only natural inference to be drawn.

Since these sections must be strictly construed one must reach the conclusion that a justice or a judge is authorized to issue a subpœna duces tecum only to a city officer having in his possession or under his control books or papers as such officer, and such authority is only by inference, having in mind the text of section 8. Otherwise the justice or judge is confined to authority for the issuance of personal subpœnas or of a summons. The power of the justice or judge being a special power in aid of the investigation is limited strictly to the power conferred and he has none of the inherent power of the court which might be possessed by him in another or judicial proceeding.

If a common council undertakes such an investigation as this one and authorizes its committee to take testimony, the common council by suitable resolution may authorize the issuance of subpœnas under the hand of the president, but the committee is not con-

fined to that method of summoning witnesses; it may go to a justice or judge, as provided in section 7 of the General City Law, and obtain a summons. It may not obtain, however, from such justice or judge a subpœna duces tecum except when directed to a city officer in relation to books and papers in his possession or under his control as such officer.

If section 40 of the Second Class Cities Law does not confer authority upon the common council to summon an individual or an officer of a corporation to produce the books or papers of the individual or of the corporation before the common council, or its committee, then this common council had no authority to subpœna the receiver to produce the books and papers of the Montgomery Coal Company.

We find no clear authority, such as must be in a statute conferring such a power, requiring a corporation having a contract with the city to submit to an examination of its books and papers, nor in aid of any criminal prosecution of its officers or agents or of the officers or agents of the city, but for the purpose of determining what was proper in the way of remedial legislation or suggestion concerning the duties of city officers.

No such inspection should be granted except under clear warrant of law. The General City Law does not give authority even to a justice of the Supreme Court to order such production of the books of a private corporation or of a citizen. The fact that the corporation here in question is in bankruptcy and not a going concern does not change the principle or enlarge the power. If the power is conferred at all it is general and applies to every person or corporation having contracts with the city.

To revert again to section 40 of the Second Class Cities Law, the phraseology of that section is such

that we must conclude that the legislature was dealing with matters concerning the regulation of the duties of city officers, that the common council was vested with power to investigate and was to be given access to the records and papers of city officers, that the legislative intent was to compel the attendance of witnesses from any of the departments of the city and to compel the production before the committee of all records and papers kept by every city officer and city department, and that it does not empower the common council to compel the attendance of any other witnesses than those in the class mentioned, nor the production of books and records other than those in the class mentioned.

It may be that the committee cannot make a complete and thorough investigation along the line which this committee has undertaken unless it have in its possession for examination other papers and records than those in the possession and control of the city departments and officers, but the common council has only such powers as are conferred upon it, and it must be able to point to a clear warrant of the law before it can assume to open up the books of an individual or the books and papers of a corporation. As before stated it has none of the inherent powers of the legislature and it has none of the police powers of the state, except as such power may be expressly granted.

It may be quite unnecessary to consider the provisions of sections 854–859 of the Code of Civil Procedure relating to compelling the attendance of witnesses. These sections apply only where a special provision is not otherwise made for compelling the attendance of witnesses. Sections 7 and 8 of the General City Law do make provision for it. If the committee had proceeded under those sections the Code provisions would not apply. There is no special pro-

vision, however, for compelling the attendance of a witness under section 40 of the Second Class Cities Law who has disregarded a subpœna issued by the common council. The proceeding therefore to punish a witness for failure to obey such a subpœna must be pursued under these sections of the Code.

The proceeding to punish this witness has been brought under the Code provisions, but it must fail for the reason that the statute, section 40 of the Second Class Cities Law, does not confer upon the common council, or its committee, the right to examine the books and records of the respondent as receiver of the Montgomery Coal Company and further it does not appear that the subpœna was signed by the president of the common council under authority to him given by resolution of that body.

The committee fails under the provisions of the law to obtain jurisdiction so far as this respondent is concerned. Jurisdiction cannot be had under the subpœna signed by the president of the common council under section 40 of the Second Class Cities Law when a witness is not an officer of the city nor connected with one of its departments and who has not in his possession any books, papers or records belonging to the city. Thus failing this proceeding cannot be entertained.

The other questions involved in this application to punish the respondent or to compel him to produce the books, papers and records of the Montgomery Coal Company for examination need not be considered.

An order may be entered dismissing the proceedings had under the order to show cause.

The order will be settled under notice if required.

Judgment accordingly.