EDWARD A. HANNA, as Mayor and Commissioner of Public Safety of the City of Utica, Appellant, *v.* COMMON COUNCIL OF THE CITY OF UTICA, Respondent.

Fourth Department, January 28, 1975.

504

*Stephen J. Pawlinga, Corporation Counsel* (*Ralph W. Fusco* of counsel), for appellant.

*Anthony J. Garramone* for respondent.

WITMER, J.  The Mayor of the City of Utica, who is also the Commissioner of Public Safety thereof, petitioned Special Term through the Acting Corporation Counsel of the City of Utica to declare void the action of the Common Council of that city in creating a committee to investigate certain actions by city officials, to vacate the subpoenas issued by the committee against Edward A. Hanna as Mayor and as Commissioner of Public Safety and to enjoin the council from proceeding with its proposed investigation through that committee.  Special Term granted the application in part by quashing the subpoenas.  It upheld, however, the right of the council to investigate city officials, but ordered that such investigation be suspended pending conclusion of an existing investigation of the suspension of the Chief of Police, Benny Rotundo, since the committee's action might be prejudicial to him.  Petitioner appeals from the order insofar as it sustains the council's right to carry on the investigation through that committee.  Respondent makes no complaint about the discretionary action of Special Term in deferring the investigation by its committee.

It appears that Mayor Hanna, in his dual capacity as Commissioner of Public Safety, suspended the Chief of Police of the City of Utica, ordered certain prisoners released, revived the vacant office of Deputy Commissioner of Public Safety and appointed the Deputy Chief of Police to the office of Deputy Commissioner of Public Safety.  Thereupon, respondent Common Council adopted a resolution on August 22, 1974 creating a special committee composed of four members of the council, including its president who was designated chairman of the committee, to investigate the circumstances surrounding the foregoing.  The resolution reads as follows:

" By Councilmen Bouse and Hathaway: RESOLVED, That the Public Safety, Law and Judiciary Committee of the Common

Council be endowed with Special investigatory powers to ascertain the circumstances and events surrounding the two days, to wit, August 19 and August 20, 1974, and the suspension of the Chief of Police, with special subpoena powers pursuant to Section 40 of the Second Class Cities Law, and said committee consist of the following:

Councilman P. McCormick Reilly, Chairman
Councilman Howard Welch
Councilwoman Sue R. Baum
Councilman Roy J. Bouse.''

Petitioner contends that the committee was not established in accordance with law and hence has no authority to investigate. The argument is based on the assertion that the council acted by resolution and not by '' ordinance passed by three-fourths '' vote of its members as provided in the first clause of section 40 of the Second Class Cities Law. There is nothing in the record to indicate the size of the council vote on the resolution creating the committee, and it appears that petitioner's argument rests principally upon the fact that the action by the council was by resolution instead of by a formal ordinance, subject to veto by the Mayor. Alternatively, petitioner contends that, if such an ordinance is not required, at any rate the resolution establishing the committee is defective and the committee's subpoenas are invalid. It is not contended that the resolution is not sufficiently definite.

Resolution of these contentions requires a review of the statutes and the case law respecting the authority of the legislative body of a city and particularly of the City of Utica. By section 19 of the General City Law, '' every city is granted power to regulate, manage and control its property and local affairs ''. Section 20 thereof provides that '' every city is empowered * * * 21. To investigate and inquire into all matters of concern to the city or its inhabitants, and to require and enforce by subpoena the attendance of witnesses at such investigations.'' Section 6 thereof provides for the swearing of witnesses by an investigating committee appointed by the council, and section 7 grants to such committee the power to subpoena witnesses.

Section 40 of the Second Class Cities Law provides: '' The common council may, by ordinance passed by three-fourths of all its members, not inconsistent with this chapter, or other laws of the state, regulate the powers and duties of any city officer or department; and it has power to investigate all city officers and departments and shall have access to all records

and papers kept by every city officer or department, and has power to compel the attendance of witnesses and the production of books, papers or other evidence at any meeting of the common council or of any committee thereof, and for that purpose may issue subpoenas signed by the president."

In *Matter of Joint Legis. Committee (Teachers Union of City of N. Y.)* (285 N. Y. 1, 8-9) Judge LEWIS wrote for the court, "The law-making power given to the Legislature authorizes it, by inquiry, to ascertain facts which affect public welfare and the affairs of government. Such power of inquiry, with process to enforce it, is an essential auxiliary to the legislative function. * * * 'A legislative body may act upon common knowledge or information voluntarily contributed. At times it stands in need of more. There is then power to investigate by subpoena under the sanction of an oath.' * * * Upon such inquiries the Legislature may compel the attendance of witnesses and the production of documentary evidence to the end that it may perform its constitutional functions by the enactment of laws to correct public dangers — either real or apprehended. This power may be delegated to a committee."

The Common Council is the legislative body of the City of Utica and it has the powers to act for that city as stated by Judge LEWIS above and as expressly provided in section 40 of the Second Class Cities Law above quoted (see, also, *People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465, 478; *Matter of Summons for Attendance of Witnesses, etc.*, 257 App. Div. 921; 39 N. Y. Jur., Municipal Corporations, § 219). The first part of section 40 authorizes a city council by ordinance to regulate the powers and duties of city officers. The remaining part of the section codifies the inherent power of a city council to investigate city officers and to compel attendance of witnesses and to issue subpoenas therefor. By its very nature such power is not subject to action or veto by the Mayor. It is one of the functions of the legislative branch of the government as opposed to the functions of the executive and judicial branches. As we held in *Matter of Summons for the Attendance of Witnesses, etc. (supra,* p. 921), "We find no merit in the contention that the common council should have proceeded by ordinance rather than by resolution".

The Common Council of the City of Utica expressly authorized its committee to issue subpoenas in accordance with section 40 of the Second Class Cities Law, and the committee was duly empowered to issue such subpoenas (*Matter of Frank* v. *Balog,* 189 Misc. 1016, affd. 272 App. Div. 941; *Matter of City*

*of Albany,* 113 Misc. 370, 379; CPLR 2302, subd. [a]; 2A Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 2302.07–2302.09; and see *Matter of Irwin* v. *Board of Regents of Univ. of State of N. Y.,* 27 N Y 2d 292, 296). The subpoenas were duly issued by the chairman of the committee who was also president of the Common Council.

The order sustaining the committee's power to pursue the investigation when it can be done without prejudice to the investigatory proceeding against suspended Chief of Police Rotundo should, therefore, be affirmed.

MARSH, P. J., CARDAMONE, SIMONS and GOLDMAN, JJ., concur.

Order unanimously affirmed without costs.