OPINION OF THE COURT
Ferris D. Lebous, J.
By way of order to show cause and petition, Anthony Massar seeks to compel three local charitable organizations to comply with subpoenas duces tecum issued by him in his capacity as a member of the City of Binghamton Common Council and chair of the City’s Municipal and Public Affairs Committee (CPLR 2308 [b]). This petition is opposed by three of the charitable organizations which were served with said subpoenas, namely, the Family and Children’s Society of Broome County, Broome County Catholic Charities and Opportunities for Broome, Inc. (hereinafter collectively respondents).[1]
The City of Binghamton also moves by way of order to show cause for permission to intervene in this proceeding (CPLR 1012, 1013).
The court heard oral argument of counsel on both applications on July 26, 2007. No opposition was presented at oral argument to the City’s request to intervene in this matter and said relief was granted from the bench and the parties proceeded to argue the merits of Massar’s underlying petition.
Background
Anthony Massar was elected as a member of the City of Binghamton Common Council in 1999 and reelected in 2003.[2] Since January 2006, Massar has served as chair of the City’s Municipal and Public Affairs Committee. In support of his petition, Massar avers that he became
*533 “aware of local media coverage concerning Binghamton’s sex offender population in which it was reported that the Binghamton area has more sex offenders per capita than any other metropolitan area in the state. That report was made by WBNG TV news in May 2005, and was followed up in February 2007, in which it was indicated that Binghamton’s status in that regard was unchanged, and that half of Broome County’s sex offenders reside in Binghamton.” (Massar affidavit 11 8.)
Sometime in early 2006, Massar issued a press release announcing his intention to investigate this subject using subpoenas. Massar concedes that prior to issuing any subpoenas he was specifically advised by the corporation counsel that any such subpoenas were unauthorized (Massar affidavit 11 7).
Nevertheless, in late 2006 and/or early 2007, Massar served his first wave of (undated) subpoenas duces tecum on the named respondents herein, three reputable local charitable agencies. Said subpoenas demanded the production of documents and information concerning the organization’s purported housing and treatment of sex offenders. Upon receipt of these subpoenas, counsel for each organization contacted the corporation counsel and were assured that the City would not seek to enforce said subpoenas because the “Common Council did not authorize issuance of any subpoenas” (Doyle affidavit, exhibit C; Sheehan affidavit, exhibit 3). Upon receiving such advice, respondents informed Massar, in writing, within a week that they would not be responding to the subpoenas on various grounds including that they were overly broad, unauthorized, violated CPLR 4508, and/or failed to include the proper witness fee. Massar did not pursue enforcement of the first wave of subpoenas.
On February 28, 2007, Common Council held a work session specifically to discuss Massar’s continued public references to an investigation and use of subpoenas. During this work session, Common Council confirmed that it had not authorized the issuance of any subpoenas.
Nevertheless, on or about March 2, 2007, Massar served a second wave of subpoenas duces tecum on the same organizations. The second set of subpoenas sought virtually the same information as the first set served months earlier. Again, respondents’ counsel advised Massar, in writing, that they considered the subpoenas unauthorized and thus void.
Upon respondents’ noncompliance with this second wave of subpoenas duces tecum, Massar filed this petition seeking to *534 compel compliance with his nonjudicial subpoenas duces tecum (CPLR 2308 [hi).
Discussion
It is undisputed that Common Council did not approve the issuance of any of these subpoenas duces tecum and/or any investigation into the percentage of sex offenders living within city limits. It is further undisputed that the City’s Municipal and Public Affairs Committee did not approve the issuance of any of these subpoenas duces tecum and/or any investigation into the percentage of sex offenders living within city limits. Finally, it is undisputed that Common Council did not authorize the hiring of outside counsel separate and apart from the corporation counsel.
Massar argues that he is imbued with subpoena power in his capacity as a member of Common Council and chair of the City’s Municipal and Public Affairs Committee. The court acknowledges, as do all the parties to this proceeding, that the subject of the subpoenas duces tecum here — issues relating to the housing and/or treatment of convicted sex offenders — is one of great public concern and interest. That having been said, however, the subject of the underlying inquiry is not pertinent to this court’s determination.[3] Rather, the sole question before the court on this petition is whether a member of Common Council and/or a committee chair thereof possesses the authority to unilaterally issue subpoenas duces tecum to compel the production of documents from third parties.
The court notes at the outset, contrary to Massar’s arguments, statutes conferring subpoena power must be strictly construed (Matter of City of Albany, 113 Misc 370 [Sup Ct, Albany County 1920]). Further, the court finds Massar’s reliance on General City Law §§ 6, 7 and 20 is misplaced for the reasons stated below.
As stated in Matter of City of Albany (113 Misc 370, 379 [1920]), “[s]ections 6, 7 and 8 of the General City Law relate to investigations by committees of the common council but do not confer any jurisdiction upon the common council or its committee to undertake the same.” Rather, ‘[t]he authority of the committee or of the council is found in section 40 of the Second *535 Class Cities Law. It is this section which confers jurisdiction upon the council and upon its committee to conduct [a] particular investigation and to take testimony therein” (Albany, 113 Misc at 380).
Section 40 of the Second Class Cities Law only grants Common Council with the authority to conduct investigations and issue subpoenas. The court notes that conspicuously absent from this section is any reference to extending subpoena power to either a committee or chair thereof. Additionally, this section grants subpoena power of witnesses and documents from city officers and departments, not citizens or separate and distinct organizations such as respondents here (Albany, 113 Misc at 383).
Massar also attempts to rely on General City Law § 20 (13) and (19) which grant a city the power to preserve and care for the safety, health, comfort and general welfare of city inhabitants and to regulate occupations and businesses in that endeavor. General City Law § 20 (21) empowers a city “[t]o investigate and inquire into all matters of concern to the city or its inhabitants, and to require and enforce by subpoena the attendance of witnesses at such investigations.” Massar views these provisions as granting him carte blanche authority to issue subpoenas to any individual and/or entity said to impact the City’s business and affairs. The court finds these provisions general in nature and, in any event, applicable to the City, not a committee or committee chair.
The City Charter and City Code are likewise restrictive. The City Charter specifically grants investigative power to the Mayor and Common Council, but does not extend such power to any committee and/or chair (City Charter § G-31 [formerly § 42]). The City Code also grants subpoena power to Common Council, but does not extend such power to individual members of Common Council, committees, and/or chairs (City Code art IX § 26-5 [U] [1] [formerly § 2-39 (U) (1)]).
Simply and succinctly, in view of the foregoing, this court finds that Massar had no authority to unilaterally issue subpoenas duces tecum to third parties and, as such, Massar’s application to enforce said subpoenas is denied.[4]
*536 Massar’s unilateral hiring of outside counsel also warrants discussion. Second Class Cities Law § 201 states, in part, as follows:
“[t]he corporation counsel shall be and act as the legal adviser of the common council and of the several officers, boards and departments of the city. He shall appear for and protect the rights and interests of the city in all actions, suits and proceedings brought by or against it or any city officer, board or department . . . and such officer, hoard or department shall not employ other counsel” (emphasis added).
The only exception to this provision is in the event of a conflict of interest. However, no conflict of interest exists here on the part of the corporation counsel in relation to the charitable organizations upon which the subpoenas were served. Massar’s argument that the corporation counsel’s disagreement with his position equates to a conflict of interest is unavailing. Thus, Massar’s actions in hiring outside counsel were in violation of Second Class Cities Law § 201.
In view of the foregoing, the court finds that respondents are entitled to motion costs, although all requests for sanctions and attorney’s fees are denied.
Conclusion
For the reasons stated, the City of Binghamton’s application to intervene in this matter is granted; and Massar’s application for an order compelling the respondents to comply with his subpoenas is denied in its entirety.

. A fourth organization, the Crime Victims Assistance Center, was also served with a subpoena duces tecum but apparently complied therewith.

. Massar’s current and last term is due to expire at the end of 2007.

. Respondents properly point out that Massar does not provide any proof in evidentiary form supporting his underlying assertions that Binghamton has an increasing and disproportionate number of sex offenders residing in the City, other than a reference to the local news report.

. Parenthetically, the court notes that it need not reach the merits of respondents’ remaining arguments regarding confidentiality of the various information sought by these subpoenas. That having been said, however, suffice it to say that respondents’ arguments were well taken on this point as well *536 and would have warranted — had the subpoenas been valid in the first instance — redacting of confidential information (CPLR 4504 [a]; 4507, 4508; 42 USC § 1320d et seq.\ Mental Hygiene Law § 33.13).